No. 3577

Second Circuit

---

## CLEMENTS ET AL. v. LUBY OIL CO., INC.

---

(December 31, 1929. Opinion and Decree.)
(January 31, 1930. Rehearing Refused.)
(May 5, 1930. Reversed by Supreme Court on Writ of Certiorari and Review and Remanded.)

---

Foster, Hall, Barrett & Smith, of Shreveport, attorneys for plaintiffs, appellees.

Cook & Cook and John B. Files, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. This suit is by S. Q. Clements and Ellis Clements, majors, and Mrs. Evie Clements, for herself and as natural tutrix of Irma Jane Clements and Donald Clements, minors, against the Luby Oil Company, Inc. Mrs. Clements is alleged to be the widow of William E. Clements, deceased, and the others to be the issue of their marriage.

They seek judgment against defendant for the death of the husband and father. in favor of the widow and minors, under the Workmen's Compensation Act (Act No. 20 of 1914, as amended) for $8,000, payable in installments of $20 a week, beginning as of December 17, 1927, with legal interest on each payment from its maturity, and for $400 as necessary expenses incident to the last illness and burial of the deceased, and, in the alternative, in favor of all of them, under article 2315 of the Civil Code, for $15,400, with legal interest thereon from December 10, 1927.

Plaintiffs allege that on December 10, 1927, the deceased was in the employ of defendant in the capacity of a manual laborer at a weekly wage of $37.50, and that on that date "in the course of his work in constructing a derrick for defendant ———— was engaged in nailing the braces on said derrick; that the construction had progressed for some distance from the ground; and that in walking along a girder the said William E. Clements stepped on a brace, which broke under his weight; that he attempted to save himself by gripping a cross-brace as he fell, but his grasp was loosened by the force of his fall, and that he fell to the floor of the derrick, a distance of thirty-four feet; that he was rushed, in an unconscious condition, to the office of a physician in Vivian, and then brought to a hospital in Shreveport, where he died on the following day."

It is further alleged that the construction of the derrick was under the supervision and direction of the president of the defendant, and that the material for its construction was supplied by defendant and that the deceased had no voice in the selection thereof; "that it is customary among prudent and careful rig builders to step upon these braces in the construction of a derrick, and that a sound brace of the same size is amply strong to support the weight of a rig builder so stepping upon it, and that crossing these braces by means of walking upon them is a necessary part of the construction of the derrick;* * * that the section of lumber used for the brace which broke and caused the death of William E. Clements was of the customary size and length used for such braces in constructing such derricks, and that, if said brace had been sound, the injury that caused the death of said William E. Clements would not have occurred, but that said section of lumber used for said brace was

faulty by reason of a hidden defect not visible or known to the deceased; and that such defect or weakness was known, or should have been known, to defendant, and was the proximate, direct and immediate cause of the injury to the said William E. Clements and of his death."

The defendant admitted the relationship of plaintiffs to the deceased as alleged by them, and also admitted the accident to and death of the deceased as alleged, but denied that the deceased was in its employ, or that the brace was faulty.

Further answering plaintiffs' petition, defendant alleged that at and prior to the time of the accident to and death of the deceased the deceased was a partner in a partnership composed of himself and M. F. Lester and doing business under the name of Clements & Lester; that defendant had contracted with the firm of Clements & Lester to construct a derrick for a certain price, the material for which was to be furnished by defendant, and that at the time of the accident to the deceased he was engaged in constructing the derrick for the partnership of which he was a member, pursuant to the contract between defendant and the partnership; that under the contract between defendant and the partnership it was the duty of the deceased or whoever else performed the work for the partnership to choose the material out of which the derrick was to be constructed from a larger lot of material suitable for that purpose; that, acting for the partnership, the deceased selected the particular material that was used in the construction of the derrick, and that if the brace was defective he knew, or by the exercise of reasonable diligence could have known, that fact, and was negligent in not discovering it, and in using material that he knew or should have known was un-

sound, and is barred from recovery by his own fault.

On these issues the case was tried, and judgment was rendered in favor of the widow and minor children, under the Workmen's Compensation Law, for $8,000, payable in installments of $20 weekly, the first payment being decreed due as of December 17, 1927, with legal interest on each payment from its maturity, and in the further sums of $100 for medical service to the deceased during his last illness and $150 for his burial expenses, with legal interest thereon from judicial demand.

From this judgment the defendant appealed, and all of the plaintiffs answered the appeal and ask that the judgment appealed from be affirmed, and, in the alternative, ask that, if this court should be of opinion that the widow and minors are not entitled to judgment under the Workmen's Compensation Act, judgment be rendered in favor of all of the plaintiffs against the defendant, under article 2315 of the Civil Code, for $15,400.

## OPINION

The view that we take of the case renders it unnecessary for us to consider plaintiffs' alternative demand. Under the pleadings and the evidence, the only question to be determined by us is whether the deceased was an employee of defendant or an independent contractor.

The deceased was a member of a partnership called Clements & Lester, the other member of which was M. F. Lester. The partnership was engaged in the business of building derricks or rigs for use in drilling wells for the discovery of petroleum. The partnership had contracted with defendant to construct for the latter a derrick or rig, the material therefor to be supplied by defendant.

In respect of the business arrangement under which the derrick was being erected, M. F. Lester testified:

"Q. You were associated with Mr. Clements?

"A. Yes, sir.

"Q. How were you associated with him?

"A. We were partners.

"Q. What kind of business were you all engaged in?

"A. The rig-building business.

"Q. What was your partnership known as? What name was it known by?

"A. We just called it Clements & Lester.

"Q. Was that an equal partnership—to share equally in the profits of the partnership?

"A. Yes, sir.

"Q. At the time of his death, what were you all doing, Mr. Lester?

"A. We were working on a derrick for the Luby Oil Company, Inc., near Hosston.

"Q. What kind of a contract or arrangement did Clements & Lester have with the Luby Oil Company, Inc., for the erection of that derrick, or for the doing of that work, Mr. Lester?

"A. We were doing—we were to do the job for so much.

"Q. How much, if you remember?

"A. Sixty-five dollars.

"Q. What were you all to furnish in the construction of that derrick?

"A. We were to furnish the labor.

"Q. Where were you all to get the material from, Mr. Lester?

"A. Well, we were not to get the material: it was to furnish the material.

"Q. The Luby Oil Company, Inc., then was to furnish the material?

"A. Yes, sir. * * *

"Q. Just what direction, if any, did Mr. Austin, of the Luby Oil Company, Inc., give you and Mr. Clements with reference to the obtaining of that material or lumber?

"A. He just told us that the material was there to build the derrick with.

"Q. Now, was that new or secondhand material?

"A. It was both.

"Q. Did he give any directions as to what pieces of material were to be used,

and those that were not to be used, or what were his instructions as to that?

"A. He only told us that the lumber was there for the building of the derrick.

"Q. Did Mr. Austin make any statement about using any material that was fit or unfit?

"A. Well, he pointed out the lumber, and told us not to use anything that was not fit, and we picked out the best that we could find.

"Q. Now, how long had Mr. Clements been in the derrick-building business?

"A. Ten years, I reckon; eight or ten years, I guess.

"Q. How long have you been in the business?

"A. The same as Mr. Clements; about the same as him.

"Q. In your business, is it part of that business to select timbers, and select material frequently from used material, and use those timbers?

"A. Yes; and we always select the best that we are able to find, and, of course, use all of it that we find that is good, and, of couse, there is some in there that is not good, that we can't use."

The witness also testified that not all of the lumber that was used in constructing the derrick was obtained from the lot that Mr. Austin pointed out for use, but that the deceased "went upon the hill and came back with" some pieces of 1x4 lumber, and that—

"Q. Mr. Lester, is 1x4 the usual and proper timber to use for braces?

"A. No.

"Q. Well, Mr. Lester, did you have any discussion with Mr. Clements with reference to getting up on those timbers?

"A. When he came back, I asked him what he was going to do with them, and he said he was going to use them; going to make braces out of them.

"Q. Did you discuss with him whether they were suitable for that or unfit?

"A. I told him that we had never used 1x4 for derrick braces.

"Q. Well, what did he say?

"A. He said we would have to do it; that there was nothing else there.

"Q. Do you know whether either you or Mr. Clements requested Mr. Austin for proper material of that kind, that is, 2x6, before you put up the 1x4?

"A. No, sir; Mr. Austin was not there that day."

The witness further testified that the contract between the defendant and the firm of Clements & Lester was oral, and that the partnership had before built other derricks for the defendant under similar contracts, and that—

"Q. What was the contract with reference to the payment of the price? When was it to be paid?

"A. We had no particular time; they generally paid when we got through with the work; sometimes 30 days afterward."

Subsection 8 of section 3 of Act No. 85, p. 113, of 1926, provides:

"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as an independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this act. *The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means* by which such result is accomplished." (Italics ours.)

It being undisputed that the deceased, at the time of the accident, was performing manual labor for defendant, he was, under the plain and unambiguous language of the law, an employee of defendant, and, as such, his widow and minor children are entitled to the compensation for his death that the act provides. The fact that the relation of employer and employee did not exist between the deceased and defendant, or that the deceased was performing the manual labor for the firm of which he was

a member, in the execution of the contract between his firm and defendant for the construction of the derrick, does not, in our opinion, exclude the widow and minor children from the benefits of the law, for the reason that under the definition a person who performs manual labor for another in a hazardous occupation is not an independent contractor, but an employee by virtue of the statute.

Or, as stated by our learned brother of the district court, in a written opinion, filed in the record:

"It seems to us that the framers of the amendment had a specific purpose in mind, and that that was to include the general definition of an independent contractor (which is applicable under all circumstances) and, in addition thereto, to protect the laborer on the job (the paramount purpose of the act) by adding an additional requirement, that a laborer could, under no circumstances (so far as that act was concerned), be an independent contractor. * * * *"

Defendant contends that, inasmuch as compensation is only in ratio to wages (except as to a minimum of $3 a week and a maximum of $20 a week), and varies with such ratio, and also inasmuch as the deceased was not earning wages, but possible profit, no basis exists for computing the compensation the widow and minors are entitled to, conceding that they are entitled to some.

This, of course, is a difficulty, but not an insoluble one, and it was solved correctly, we think, by the lower court. Subsection 3 of section 8 of Act No. 85 of 1926, p. 119, provides that—

"The term 'wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury. * * * *"

The evidence shows that the derrick could have been built by four workmen in one day, and that the deceased and the three others working with him at the time of the accident could and would have completed it in a day, but for the accident. The evidence also shows that the aggregate of the daily wages paid the three workmen other than deceased was $28. This would have netted the firm of Clements & Lester a net profit of $37 on the job, and, as the deceased was an equal partner with Lester, he would have been entitled to one-half this amount.

The compensation to which a widow and two or more children are entitled to is 65 per cent of wages for not exceeding 300 weeks (Act No. 85 of 1926, p. 117, sec. 8. subsec. 2, cl. (E), par. 3; Bass v. Weber-King Mfg. Co., 168 La. 651, 123 So. 112); but in no event more than $20 per week (same act, same section, subsection 3). Computing deceased's earnings on the basis of $18.50 a day, his weekly earnings were more than enough to entitle the widow and minors to the maximum compensation of $20 a week that the law allows.

However, they were not entitled to judgment for this sum for any definite number of weeks, but during not exceeding 300 weeks. Defendant's liability to pay compensation may not continue for full 300 weeks. Same act, same section, subsection 2, clause (F). The judgment appealed from does not fix the time during which defendant's obligation to pay compensation shall continue, and in that respect is erroneous and must be amended.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, so as to award Mrs. Evie Clements, individually and as tutrix, for the common benefit of herself and two minor children, Irma Jane Clements and Donald

Clements, compensation of $20 a week during not exceeding 300 weeks, the first weekly payment commencing as of date December 17, 1927, with legal interest on each payment from its maturity until paid.

It is further ordered, adjudged, and decreed that, in all other respects, the judgment appealed from be affirmed. Plaintiffs to pay the cost of the appeal.

ODOM, J. (dissenting). I respectfully dissent from the majority holding in this case, for the reason that in my opinion the deceased was an independent contractor. An independent contractor, under the act cited and quoted in the majority opinion, is one "who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only and not as to the means by which such result is accomplished." Act No. 85 of 1926, p. 113, sec. 3, subsec. 8.

Deceased and his partner contracted to build for defendant a derrick complete. The specified recompense was $65, and the specified result was the completed derrick. As to the means of building the derrick, the deceased and his partner were in no sense under the control or direction of defendant. They were under the control of defendant as to the result of the work only. All they had to do under the contract, in order to receive the specified recompense, was to complete the derrick according to specifications. My associates concede, as I understand them, that in these essentials deceased was an independent contractor. But, in the majority opinion, it is stated:

"It being undisputed that the deceased, at the time of the accident, was performing manual labor for defendant, he was, under the plain and unambiguous language of the law, an employee of defendant, and as such, his widow and minor children are entitled to the compensation for his death that the act provides."

In my opinion, a wrong interpretation has been placed upon the statute. It specifically provides and recognizes that a man may render two kinds of service for another. He may render service as an independent contractor—that is, to do work "for a specified recompense for a specified result"—or he may render service purely and simply as a laborer for a daily or weekly wage. In one case, he is under the control of his employer "as to the results of his work only," and is excluded from the benefits of the statute; while, in the other, he works under the direction of his employer, and compensation is due in case of injury or death.

. Deceased was at the time of his death rendering service for defendant; but he was rendering that service as an independent contractor, and not as a laborer. The distinction between the two kinds of service is clearly and manifestly pointed out in the statute itself. The effect of the majority holding is that one cannot be an independent contractor if the service to be rendered in order to accomplish the specified result involves manual labor. To so hold, in my opinion, is to render null and ineffective that portion of the statute which provides that independent contractors are not entitled to compensation.

Under the statute, compensation is due if an employee is accidentally injured or killed while "performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations."

Act No. 20 of 1914, sec. 1. Following the above-quoted portion of the statute, the kinds of trades, businesses, and occupations deemed to be hazardous are enumerated, and palpably each and every one named involves manual labor. No house, railroad, sawmill, factory, or other structure can be built without manual labor; but all such structures may be undertaken or built by an independent contractor, who by express terms is denied compensation under the law.

Now, when a man undertakes to build a house, a derrick, or other structure as an independent contractor, what difference does it make in so far as his relation to his employer is concerned, under the law, whether he does the work with his hands, or hires it done by another? None whatever, in my opinion.

What occurred in the case at bar was that deceased and his partner agreed to build a derrick for defendant for $65. It is conceded that they were "under the control of his (their) principal as to the results of the work only and not as to the means by which such result is (was) accomplished." They chose to do the work with their own hands, and while they were doing the work they were laborers, of course. But they were not employed to render service for defendant as laborers, but as independent contractors. As laborers, they were working for themselves, and not for defendant.

The judgment appealed from should have been reversed.